### Everett House et al. v. Louis Schnadig.

### Gen. No. 13,600.

1. BANKRUPTCY—*appropriate judgment upon sustaining plea of discharge.* A plea of discharge in bankruptcy is a plea in bar, and generally, if sustained by the proof, entitles the defendant to a judgment *nil capiat.*

2. BANKRUPTCY—*Hill v. Harding, 116 Ill. 92, distinguished from the present case.* It is only in exceptional cases that a judgment

against the defendant, after a discharge in bankruptcy, should be entered with a perpetual stay of execution. The present case, which was a trial *de novo* before the Circuit Court, on an appeal from a justice of the peace rendered less than four months before the defendant filed his petition in bankruptcy, is not such a case.

3. SURETYSHIP—*when surety upon bond released by principal's discharge in bankruptcy. Semble:* That a surety upon a bond given upon an appeal from the judgment of a justice of the peace is not liable on the bond where the petition in bankruptcy has been filed within four months after the judgment by the justice and the trial *de novo* resulted in a judgment for the defendant on the ground of a discharge on said petition. The question, however, is not involved in this appeal.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed January 27, 1908.

**Statement by the Court.** Everett House and William E. House, the appellants herein, on May 5, 1906, began a suit against Louis Schnadig, the appellee herein, before a justice of the peace in Chicago, for a demand not exceeding $200. The summons in said suit was served on the said Schnadig on May 8, 1906. It was called for trial before the justice on May 11, 1906, and continued from time to time until May 21, 1906. On that day judgment was rendered against the defendant Schnadig for $81.50 and costs.

May 28, 1906, an execution was issued by the justice and delivered to a constable, but on May 31st an appeal to the Circuit Court was taken by Schnadig, who filed with the justice an appeal bond with one Emma Leroux as surety thereon in the sum of $175, with this condition: "Said Louis Schnadig shall prosecute his appeal with effect and pay whatever judgment may be rendered against him by the Circuit Court upon the trial of said appeal, or by consent, or in case the appeal is dismissed or in case the matter in controversy is settled between the parties to the suit without a trial by the court appealed to, will pay the judgment rendered against him by said justice and all

costs occasioned by said appeal, then the above obligation to be void, otherwise to remain in full force and effect.''

On the eighth day of June, 1906, Schnadig filed a voluntary petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, Eastern Division. On October 5, 1906, he obtained an injunction or restraining order in the District Court fobidding the plaintiffs from proceeding in any manner with the cause pending in the Circuit Court of Cook county. December 3, 1906, the defendant obtained a discharge in the bankruptcy proceedings before mentioned, discharging him from all his debts in accordance with the laws of the United States pertaining to bankruptcy, among which debts so discharged was that of the plaintiffs herein.

December 24, 1906, the plaintiffs on petition filed by them in the said District Court of the United States obtained an order from said court modifying the restraining order of October 5, 1906, so as to allow the plaintiffs herein to proceed to judgment, but perpetually restraining the said plaintiffs from taking out execution against the defendant on said judgment ''so that the plaintiffs herein might assert their rights against the surety on the appeal bond.''

The plaintiffs then proceeded and proved their claim before the Circuit Court. The defendant offered in evidence a certified copy of his discharge in bankruptcy. The plaintiffs thereupon moved for a judgment against the defendant for the sum of $81.50 and costs, with a perpetual stay of execution. The defendant made a counter motion for a judgment against the plaintiffs. The court denied the motion of the plaintiffs and allowed that of the defendant, entering a judgment of *nil capiat* and for costs against the plaintiffs.

The bill of exceptions recites that ''The court found that at the time the suit was started there was due to the plaintiffs from the defendant the sum of $81.50, but that the same has been discharged by bankruptcy.''

A motion for a new trial was made by the plaintiffs and overruled by the court. The plaintiffs then appealed to this court, raising here by their assignments of error and argument the single question: Ought the court below to have complied with their request for a judgment in their favor, coupled with a perpetual stay of execution?

MUSGRAVE, VROMAN & LEE, for appellants.

BENJAMIN SAMUELS, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

If the question raised in this appeal as before stated, is to be answered on logical grounds, without reference to ulterior results or to the authority of cited cases, it would seem that there cannot be much difficulty in its solution.

The National Bankruptcy Act in its first section expressly provides that the word "discharge" as used in the act "shall mean the *release* of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this Act." Section 17 of the act provides that "A discharge in bankruptcy shall release a bankrupt from all his provable debts," with certain exceptions not relevant in this case. A discharge in bankruptcy must be pleaded, but where it is pleaded it is in bar, and a good plea in bar sustained by proof naturally entitles the defendant to a judgment of *nil capiat*. It is true that "a debt discharged is not a debt paid," and consistently with that idea it is the law that a moral consideration remains after the "discharge" or "release" that will support a new promise to pay. It has therefore sometimes been loosely said that "the discharge goes only to the remedy."

But while it requires no precedent or argument to show that a discharged bankrupt ought in conscience

to see to it that if he afterwards becomes able, his former creditors should be reimbursed for their losses by his bankruptcy, it cannot be called a precise use of words to say that a *debt* remains legally in existence from which the debtor is "discharged" and "released." It would seem more proper to say "It is due in conscience, although discharged in law." And it is not in the forum of conscience but of law that the question must be decided, whether, in the face of the discharge pleaded and without evidence of a new promise, a judgment at law can be rendered against the defendant. That logically it cannot, would seem plain, and that this is the law in the absence of peculiar circumstances has certainly been stated in Illinois by this court and by the Supreme Court. Friedman v. Verchofsky, 105 Ill. App. 414; Leseure v. Weaver, 108 Ill. App. 616; Phelps v. Curts, 80 Ill. 109.

Counsel in effect say that the statements to this effect in these cases are *obiter dicta,* but they express at all events, very plainly, the thought of the judges writing the opinions. Indeed, there can be no serious denial of the proposition without declaring inconsistent with correct procedure the constant practice of the courts of Illinois. When a discharge is pleaded and sustained, the judgment is denied. If it is not sustained in the opinion of the lower court, and the reviewing court holds that it was so sustained, the latter tribunal reverses and wipes out the judgment that has been given. If the Supreme Court of the state is adjudged by the Supreme Court of the United States mistaken in upholding lower courts in sustaining such a judgment, the judgment is finally reversed and vacated in accordance with the decision of the Federal Supreme Court. The objection of the defendant is not in these cases limited to the issuance of an execution, but to the judgment itself, and if the objection is sustained, his rights are in accordance therewith.

It is plain indeed from their argument that what-

ever plaintiffs may think of their general right to a judgment without execution against the defendant, they would not have insisted on it except for the ulterior purpose of bringing about a breach of the condition in the bond filed with the justice on the appeal to the Circuit Court, and thus holding the surety on that bond for the amount of the judgment. Why in reason should the court depart from what would otherwise be considered its plain duty in order to bring about this result?

The judgment before the justice was obtained within four months and indeed within three weeks of the filing of the petition in bankruptcy by the defendant.

By the express terms of section 67f of the Bankruptcy Act (which has been held in this district and by the great weight of authority elsewhere to apply to both voluntary and involuntary bankruptcies) the judgment, as well as any execution and levy under it, was rendered null and void by the adjudication in bankruptcy.

The undertaking of Emma Leroux, the surety in the bond which was given on the appeal, was not to pay the debt, or see that the debt was paid; it was to pay whatever judgment should be rendered against the defendant in a trial de novo, or, if there were no such trial, to pay the judgment of the justice. A surety's liability is not to be enlarged by construction; it is strictly limited to the express undertaking. There was a trial de novo; the defendant had come into a new defense since the plaintiffs' judgment before the justice, and he presented that defense to the Circuit Court. Why should the Circuit Court depart from that which it must be conceded would be, except for the liability of this bondsman, its natural, proper and usual method of procedure, in order to fasten a liability on the bondsman?

Counsel for plaintiffs suggest, and counsel for defendant repudiate, the theory that the debtor took the appeal and the bondsman executed the bond for the

purpose of tying up the creditor until a petition in bankruptcy could be filed. Assume, however, that this is true—where is the moral obliquity? The judgment would have been rendered void, and the execution and levy with it, by the bankruptcy proceedings. Why should not the expense and annoyance of the execution and the levy be prevented, for the nonce, while the bankruptcy petition was being prepared?

For the reasons which we have indicated it seems to us that logically the action of the Circuit Court in refusing to render a judgment against the defendant is justified.

The appellants, however, insist that the Branch Appellate Court of this District and the Supreme Court of this state have spoken on this question and given a different answer, and cite and quote at length from Flack v. Moore, 117 Ill. App. 551, and Hill v. Harding, 116 Ill. 92, and 130 U. S. 699, to establish their contention.

The opinion in Flack v. Moore is, of course, only authority for us in the case in which it was rendered, and the same may be said of a *dictum* by Judge Windes of this court in Elder v. Prussing, 101 Ill. App. 655, which is quoted in the argument filed for appellants. However, this is not material, for the law as laid down in Hill v. Harding, 116 Ill. 92, is of course absolutely binding on us. If we could not, as we think, clearly distinguish the situation in that case from the one at bar, in a manner which shows the opinion in the former inapplicable to the latter, we should be obliged to reverse the judgment here complained of. We are not at liberty to heed the suggestion of counsel for appellee that the case of Hill v. Harding has not announced the law correctly. It is conclusive evidence of the law to us.

But if Hill v. Harding can be properly distinguished from the case at bar, it cannot be held applicable, and in that case the citations from the Appellate Court, even if they were binding on us, would fail of rele-

vancy herein, for the same distinction can be found in them as in Hill v. Harding. In that case an attachment had been made of the defendant's goods more than four months before the bankruptcy petition had been filed by him. The lien in favor of the attaching creditor would therefore have been valid as against the other creditors and the assignee in bankruptcy of the defendant. A bond to release the attachment under the statute had been given. By this the security of the bond had been substituted for what would have been the valid lien of the attachment. By pleading the discharge in bankruptcy, the defendant sought to destroy the substituted security which had already superseded, by force of the statute, the valid lien which was good against the bankruptcy proceedings. This the Supreme Court of Illinois refused him permission to do, directing the court below to enter a judgment against the bankrupt with a stay of execution, with the evident purpose of protecting what were plain equities of the attaching creditor both under the state and the federal law. Hill v. Harding, 116 Ill. 92; 107 U. S. 631. The Supreme Court of the United States said, not that there was anything in the Bankrupt Law which compelled such a course, but that there was nothing in the law which forbade it, and therefore no right on its part to interfere with the judgment rendered by the Illinois Court, although in other jurisdictions the question had been decided differently. Hill v. Harding, 107 U. S. 631; 130 U. S. 699.

We do not think that this case justifies the claim of the appellants here; and if it is not applicable, neither are the cases cited from the Appellate Court.

The cases from other jurisdictions which are cited by the appellants as favoring their contention can be still more easily distinguished, we think, while there are many such, as is conceded by appellants' counsel, which hold to the contrary view. Such also is the doctrine of a *dictum* of Chief Justice Waite in Wolf v. Stix, 99 U. S. 1.

Section 16a of the Bankrupt Act—that the liability of a surety for a bankrupt shall not be altered by the discharge of such bankrupt—does not seem to us to have any application here, because, so far as the liability of the surety is in question here, the dispute is upon what that liability was. It was not altered by the action of the court in rendering judgment against the plaintiffs. The contention of the appellee is, in the language of Chief Justice Waite in Wolf v. Stix (*supra*), "the act has not happened on which the liability of the surety was made to depend."

The statement is made by the appellants' counsel in their argument, that "When the defendant obtains a discharge in bankruptcy after filing an appeal bond, such as the one in this case, and pleads his discharge in bar of further proceedings in the State Court, he has not 'prosecuted his appeal with effect.'" It is not necessary for us to pass on the soundness of this position. It is manifest, however, that if it be sound, the liability of the sureties does not depend on the action of the court in this suit.

The judgment of the Circuit Court is affirmed.

*Affirmed.*